UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BRONSON SHELLEY #353229, | ) | Civil Action No. 4:18-cv-2229-JFA-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| BRYAN P. STIRLING and J. MICHAEL BROWN, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.   INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq.  Presently before the Court is Defendants' Motion to Dismiss (ECF No. 21).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in dismissal of his Complaint.  Plaintiff timely filed his Response (ECF No. 25).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.   This report and recommendation is entered for review by the district judge.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges he filed repeated requests, beginning in August 2016, for recognition of the faith, "Hebrew Israelites."  Plaintiff requested kosher and vegan diets, to be allowed to grow hair in locks, braids, or afro-styles, and grow long beards with no limitations on hair length.  Compl. at p.

-2-

5. Plaintiff alleges Stirling and Brown delayed the faith recognition process. Compl. at p. 6. Plaintiff alleges Stirling violated his First Amendment rights and RLUIPA. Compl. at p. 7. Plaintiff alleges Brown is the head chaplain and responsible for faith recognitions and religious activities. Compl. at p. 2. Plaintiff alleges he was subject to discrimination and arbitrary denial of the ability to practice his faith beyond what is needed for safety, security, and proper functioning of the institution in violation of the First Amendment and RLUIPA. Compl. at p. 4.

### III.    STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.     DISCUSSION

In his complaint, Plaintiff asserts pursuant to § 1983 that Defendants violated his rights guaranteed under the First Amendment and RLUIPA. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Defendants argue that dismissal of Plaintiff's claims is proper because § 1983 claims brought against state officials in their official capacities are improper, Plaintiff failed to exhaust his administrative remedies, and Plaintiff's complaint fails to state a claim for which relief can be granted.

### A.     Claims Against Defendants in Their Official Capacities

With respect to Plaintiff's claims for monetary damages against Defendants in their official capacities, the claims fail. Under the Eleventh Amendment, states as well as their agencies and

departments are immune from suits in federal court brought by their citizens or the citizens of another state. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). "Under the Eleventh Amendment, 'a State cannot be sued directly in its own name regardless of the relief sought,' absent consent or permissible congressional abrogation. For the purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003) (citations omitted). A suits against a state defendant in his official capacity is construed as a suit against the office itself, and so sovereign immunity precludes such a suit for damages. Will, 491 U.S. at 71. However, Plaintiff also seeks injunctive relief, and those official capacity claims are not barred by the Eleventh Amendment.

### B.     Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399

(6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

The SCDC inmate grievance procedure is basically a three-step process. First, an inmate must attempt to resolve the issue through an Informal Resolution. The attempt at an Informal Resolution is a prerequisite for filing a grievance and must be documented on a Request To Staff Member Form. This Form must be submitted to the appropriate staff member within eight working days from the date of the incident for which the inmate is seeking resolution. Anderson Aff. ¶ 5 (Ex. to Def. Motion).

Next, the inmate must file a Step 1 Grievance by filing out an Inmate Grievance Form, Step 1. Inmates must file a Step 1 Grievance within eight (8) working days of receiving a response from a written Request To Staff Member Form. If an inmate does not include an answered Request To Staff Member Form with his Step 1 Grievance, the inmate is given five (5) days from the date the Step 1 Grievance is returned to him in order to attach the answered Request To Staff Member Form and resubmit the grievance. Anderson Aff. ¶ 6.

If the inmate is not satisfied with the response to his Step 1 Grievance, the inmate must appeal that response by checking the box on the Step 1 Grievance Form that states, "I do not accept the action taken and wish to appeal" within five days of receipt of that response. At that point, the inmate must also submit a Step 2 Inmate Grievance Form that is provided to him by the Inmate

Grievance Coordinator (IGC) when the Step 1 Grievance Form is served on him, if he disagrees with the Step 1 decision. Anderson Aff. ¶ 9. The response to the Step 2 Grievance is considered SCDC's final agency decision on the issue. Anderson Aff. ¶ 10.

Plaintiff attached to his complaint Request to Staff Member forms dated August 18, 2016, December 21, 2016, March 31, 2017, September 17, 2017, in which he inquired about the status of the "faith recognition process." See Request to Staff Member Forms (Exs. A, B, C, E to Compl.). The response to each request was that the paperwork for his request for faith recognition of the Hebrew Israelites had been forwarded to the SCDC legal department and they were awaiting a response. See Request to Staff Member Forms (Exs. A, B, C, E); see also Anderson Aff. ¶ 15.

On September 25, 2017, Plaintiff filed a Step 1 Grievance stating that he was "being subject to discrimination and arbitrary denial of the ability to practice [his] faith beyond what is needed for the safety, security, and proper functioning of the Institution." Step 1 Grievance No. BRCI-0521-17 (Ex. to Def. Motion.). The Inmate Grievance Coordinator (IGC) returned the grievance unprocessed, stating "you have failed to await SCDC Legal Dept. response by Chalpin Hendrix." Step 1 Grievance No. BRCI-0521-17.

On November 8, 2017, Plaintiff submitted another Request to Staff Member form, stating "I submit this RTSM to appeal the unprocessed grievance I received on 11/1/17." Request to Staff Member Form (Ex. G to Compl.). Plaintiff stated that the IGC "erroneously returned my grievance unprocessed" for failing to await a response from the SCDC legal department because he has been waiting for their response for "close to 2 years." Request to Staff Member Form (Ex. G to Compl.). This Request to Staff member was also returned from the Inmate Grievance Branch of the Office of General Counsel because "[t]he issue of the recognition of your faith has been addressed in a grievance." Memorandum (Ex. H to Compl.). Plaintiff was told to "[c]ontact your local Inmate

-6-

Grievance Coordinator for assistance in filing grievances." Memorandum (Ex. H to Compl.).

Thereafter, on May 12, 2018, Plaintiff submitted another Step 1 Grievance complaining that the faith recognition process has taken over two years and he is suffering discriminatory or arbitrary denial of his ability to practice his faith. Step 1 Grievance No. BRCI-0271-18 (Ex. to Def. Motion). Plaintiff received the following response: "This grievance is being returned unprocessed as a duplicate to issues raised in ECI-0418-17.[1]  In addition, it appears you are attempting to grieve multiple issues. Per GA-01.12 Inmate Grievance System '...***Inmates will only be allowed to submit one grievance per incident or circumstance***.'" Step 1 Grievance No. BRCI-0271-18 (Ex. to Def. Motion).

Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to file a Step 2 Grievance following either of his Step 1 Grievances. However, the SCDC Grievance Procedure provides that "[u]nprocessed grievances may only be appealed by utilizing SCDC Form 19-11, 'Inmate Request to Staff Member,' (RTSM) to the Branch Chief within ten (10) days of the grievances being returned to the inmate. The inmate must provide a copy of the unprocessed grievance with the RTSM." GA-01.12, § 13.3.  Plaintiff complied with this policy by filing a Request to Staff Member form on November 8, 2017, after receiving the unprocessed Step 1 Grievance on November 1, 2017. Request to Staff Member Form (Ex. G to Compl.). As stated above, Plaintiff specifically stated in the Request to Staff form "I submit this RTSM to appeal the unprocessed grievance that I received on 11/1/17." Request to Staff Member Form (Ex. G to Compl.). This court has recently held that "a reasonable fact finder could conclude from the record viewed in a light most favorable to Plaintiff that he did exhaust his administrative remedies when

---

[1]Grievance No. ECI-0418-17 is not in the record.

he [timely] submitted his 19-11 Form . . . after the unprocessed grievance was returned to him." Butler v. Bessinger, No. 4:16-cv-3662-RMG, 2019 WL 181530, at *3 (D.S.C. Jan. 14, 2019); cf. Singleton v. McKie, No. 2:1 l-cv-676-TLW-BHH, 2012 WL 1038762, at *5 (D.S.C. Mar. 9, 2012) (finding plaintiff did not exhaust administrative remedies where "Plaintiff was free to ... file a Step 2 Grievance, or otherwise appeal the determination of his Step 1 Grievances [but] Plaintiff did not do so") (emphasis supplied); Livingston v. Padula, No. 8:08-3064-HFF, 2009 WL 1872107, at *4 (D.S.C. June 29, 2009) (finding plaintiff did not exhaust administrative remedies where he "was free to ... appeal the determination not to process the initial grievance [but] ... did nothing") (emphasis supplied).[2]  Therefore, dismissal for failure to exhaust is not appropriate.

### C.     Failure to State a Claim

Defendants also argue that Plaintiff's Complaint fails to state a claim against them. As set forth above, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 570.). This court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

A plaintiff asserting a claim under RLUIPA must allege that: (1) he seeks to engage in an exercise of religion; and (2) the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc–2(b). Plaintiff alleges that he seeks to engage in an exercise of his religion as a Hebrew

---

[2]Although the record does not indicate whether Plaintiff filed a Request to Staff Member form after his second Step 1 Grievance was filed, the issues raised in the second Step 1 Grievance were the same as those raised in his first one.

Israelite by not cutting the hair on his face or head and abstaining from wine and food from the vine. Compl. p. 5. He also seeks to be served kosher meals as part of his religious beliefs. Compl. p. 5. Plaintiff alleges that he has not been able to do this because Defendants Stirling and Brown have delayed the faith recognition process for over two years and have denied him the ability to practice his faith by imposing frivolous and arbitrary restrictions on his religious liberty. Compl. p. 6. Although his specific allegations against Defendants are slim, Plaintiff has pleaded facts sufficient to allege that both Stirling and Brown have burdened his attempts to practice his religion by delaying his request for recognition of the Hebrew Israelites faith. His allegations show that he has been seeking approval of his requested faith recognition for over two years and during that time he has not been able to engage in the exercise of that religion. Therefore, dismissal at this stage of the litigation is not appropriate.

    **D.**    **Request for Preliminary Injunction**

Finally, Plaintiff asks in his complaint that the court issue a "preliminary and permanent injunction ordering Defendants Bryan P. Stirling and J. Michael Brown to recognize the Hebrew Faith" and allow him to practice the various rituals and customs of that faith. Compl. p. 8. Defendants argue that Plaintiff has failed to make the requisite showing for a preliminary injunction.

The standard articulated in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), governs the issuance of preliminary injunctions. See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 607 F.3d 355 (4th Cir. 2010). Under the Winter standard, Plaintiff must demonstrate " '[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities

tips in his favor, and [4] that an injunction is in the public interest.' " Id. at 346 (quoting Winter, 555 U.S. at 20). All four requirements must be satisfied. Id. Here, Plaintiff fails to discuss these factors. Therefore, a preliminary injunction is not appropriate at this time.[3]

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (ECF No. 21) be denied.

                                                s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
                                                United States Magistrate Judge

March 11, 2019
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[3] No motion for preliminary injunction has been filed.