IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| BRONSON SHELLEY #353229, | ) | Case No.: 4:18-cv-2229-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| BRYAN P. STIRLING, J. MICHAEL BROWN, and DENNIS PATTERSON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States Magistrate Thomas E. Rogers, III ("Report and Recommendation"), made in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(d) of the District of South Carolina.[1] Bronson Shelley ("Shelley" or "Plaintiff"), proceeding *pro se*, seeks damages based on alleged civil rights violations pursuant to 42 U.S.C. § 1983, alleging violations of the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq.. Defendants filed a Motion for Summary Judgment on June 1, 2020. (DE 99.) On June 5, 2020, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and motion to dismiss procedures and the possible consequences if he failed to respond adequately to the motion. (DE 101.) Plaintiff filed a Response to Defendants' Motion for Summary Judgment on July 16, 2020. (DE 116.)

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

On January 28, 2021, the magistrate judge issued a Report and Recommendation, recommending that Defendants' Motion for Summary Judgment be granted as to Plaintiff's claim under RLUIPA and as to all claims against Defendant Stirling and that it be denied as to Plaintiff's Free Exercise claims against Defendants Brown and Patterson and further that the Plaintiff's Motion for Relief from Judgment of Order (DE 106) be denied.  (DE 128.)  Defendants filed Objections on February 11, 2021, contending that Defendants are entitled to qualified immunity.  (DE 134.)  Plaintiff filed Objections on March 12, 2021, contending that his Motion for Relief from Judgment should be granted because:

> Plaintiff is now back in custody of the South Carolina Department of Corrections. . . [and] his claims against Defendants in their official capacities seeking injunctive relief are no longer moot as the issues are 'live' and he has a legally cognizable interest int eh outcome of a judicial decision on the merits of his claims as he is still being subjected to the challenged policy, practice, and conditions originally asserted in his original complaint and the District Court could provide him with meaningful relief. . . .

(DE 139.)

For the reasons stated below, the Court adopts the Report and Recommendation, in part, and grants Defendants' Motion for Summary Judgment.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this action seeking both a preliminary and permanent injunction mandating that the South Carolina Department of Corrections ("SCDC") recognize "Hebrew Israelite" as a religion and afford him a series of accommodations.  He also sought damages in the amount of $1,000,000 against Defendants in both their individual and official capacities. Defendants previously moved to dismiss the case on the grounds that Defendants could not be held liable in their official capacities, that Plaintiff had failed to exhaust his administrative remedies, and that Plaintiff had failed to state a claim. The Court then dismissed Plaintiff's claims for damages against Defendants in their official capacities and dismissed Plaintiff's claims for

injunctive relief as moot because of his release from SCDC custody.[2]  Only the claims for damages against Defendants in their individual capacities survived.  This matter is now ripe for review.

## II.    <u>DISCUSSION</u>

Objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'"  <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (2005) (citing <u>Thomas v. Arn</u>, 474 U.S. 140 (1985) (emphasis added)). In the absence of <u>specific</u> objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that the Plaintiff's objections are non-specific, unrelated to the dispositive and/or at the heart of disputed portions of the Report and Recommendation, or merely restate his arguments.[3]  However, the court was able to glean the following specific objection from Defendants. Defendants object to the Report and Recommendation because "there is no question of fact relative to the racial teachings of Plaintiff's religion and thus there is no question of fact regarding the Defendants' right to qualified immunity."  (DE 134, p. 1.)

---

[2]    On June 24, 2020, Plaintiff filed a motion for relief from said order, asserting that he was committed back to the custody of the SCDC on December 19, 2019, and therefore his claims for injunctive relief are no longer moot.  (DE 106.)  On August 21, 2020, Plaintiff filed a new lawsuit, asserting the same claims as those herein, but adding an additional defendant and a claim for injunctive relief.  The Court notes Plaintiff can pursue injunctive relief in the new action and denies the Motion for Relief from Judgment of Order.

[3]    For example, Plaintiff primarily focuses on the Report and Recommendation denying Plaintiff's Motion for Relief from Judgment; however, this Court's dismissal of this claim is without prejudice for Plaintiff to refile.  See n. 2, <u>supra</u>.

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." <u>Meyers v. Baltimore County</u>, 713 F.3d 723, 731 (4th Cir. 2013). "Not all constitutional violations are violations of clearly established ... constitutional rights, so a plaintiff may prove that an official has violated his rights, but an official may still be entitled to qualified immunity." <u>Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst</u>, 810 F.3d 892, 907 (4th Cir. 2016) (citing <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 261 (4th Cir. 1991) (internal citations and quotations omitted)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 237, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts presented, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. <u>See</u> <u>Pearson</u>, 555 U.S. at 230-33. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' (citations omitted) ('[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" <u>Pearson</u>, 555 U.S. at 244.

Although this Court agrees with the Report and Recommendation that issues of fact exist as to the racial teachings of the Hebrew Israelite, the Court finds the denial of the Plaintiff's request to recognize "Hebrew Israelite" as a religion and affording him a series of accommodations did

not violate a clearly established law. Accordingly, Defendants are entitled to summary judgment on their qualified immunity defense.

Under the First Amendment, inmates clearly retain the right to free exercise of religion in prison. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The Free Exercise Clause of the First Amendment prohibits the adoption of laws designed to suppress religious beliefs or practices. See Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir.2001). To state an actionable violation under the Free Exercise Clause, a plaintiff must show both that he has a sincerely held a religious belief and that the defendant's actions substantially burdened his religious freedom or expression. See Blue v. Jabe, 996 F.Supp. 499, 502 (E.D.Va.1996) (discussing Wisconsin v. Yoder, 406 U.S. 205, 215–216, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Substantial burden includes forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion ... on the other." Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

However, state action only violates a prisoner's constitutional rights if it burdens the prisoner's religious rights and is not reasonably related to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89 (1987). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. See Cruz v.

Beto, 405 U.S. 319, 322 (1972).  That retained right is not unfettered.  Prison restrictions that have

an impact on the free exercise of religion but are related to legitimate penological objectives, do

not run afoul of the Constitution.  See Turner, 482 U.S. at 89-91.  Defendants here do not dispute

that Plaintiff has a sincerely held religious belief in the Hebrew Israelite religion.  However, even

when a court concludes that a plaintiff has alleged the violation of a constitutional right, the

defendants are entitled to qualified immunity unless the plaintiff can show that the right was clearly

established at the time of the conduct.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled

by Pearson, 555 U.S. at 243 (holding that the traditional two-step inquiry into qualified immunity

is not mandatory).  The Supreme Court has articulated, "the right the official is alleged to have

violated must have been 'clearly established' in a more particularized, and hence more relevant,

sense:  The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640

(1987).  "If the law did not put the officer on notice that his conduct would be clearly unlawful,

summary judgment based on qualified immunity is appropriate."  Saucier, 533 U.S. at 202.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  Short of that, however, "if a reasonable officer

might not have known for certain that the conduct was unlawful – then the officer is immune from

liability."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017).

    In this case, the Report and Recommendation found that the issue of fact regarding whether

Plaintiff's request was properly denied is a genuine issue of material fact.  The Report and

Recommendation's finding standing alone would usually preclude summary judgment on qualified

immunity.  However, whether Plaintiff's request was properly denied goes only to the first prong

of the analysis – that is, whether Plaintiff's constitutional right was violated.  It does not bear on

this second prong of the analysis – that is, whether, even if Plaintiff's right was violated, his right was clearly established.[4]  Plaintiff shoulders the burden at this stage of a qualified immunity analysis.  See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  Plaintiff has not shown that it is clearly established that the PS-10.05 policy violated his right to free exercise of religion in prison.  Moreover, nothing in the record would suggest that Defendants knew or should have known for certain that their implementation of SCDC Policy 10.05, Inmate Religion (correctly or not) was unlawful, therefore entitling them to qualified immunity.  See Ziglar v. Abbasi, 137 S.Ct. at 1867 ("if a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability.")

## CONCLUSION

It is, therefore, **ORDERED** that Defendants Motion for Summary Judgment is granted and that Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Greenville, South Carolina
March 31, 2021

---

[4]    The Saucier Court noted:

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

Saucier, 533 U.S. at 201.

Here, Plaintiff has made a showing of a constitutional right, the free exercise of religion, therefore, the next step in this inquiry is whether the right was clearly established.  The answer in this case is no.

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from

the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.